**SO ORDERED.**

**SIGNED this 3 day of January, 2014.**



_____
**James D. Walker, Jr.
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 13-10835-JDW |
| DENISE E. MOONEY, | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Trustee:   Robert M. Matson
Post Office Box 1773
Macon, Georgia 31202

For Debtor:   Matthew S. Cathey
Ward Stone
577 Mulberry Street, Suite 800
Macon, Georgia 31201

## MEMORANDUM OPINION

This matter comes before the Court on the Chapter 7 Trustee's Objection to Claim of Exemptions. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(B). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor Denise Mooney filed a Chapter 7 petition on June 27, 2013. On Schedule B, Debtor listed a health savings account ("HSA") with a value of $17,570.93. On Schedule C, Debtor claimed an exemption for the full value of the HSA under O.C.G.A. § 44-13-100(a)(2)(C) and (E). The Chapter 7 Trustee objected to the exemption.

Debtor is self-employed as a physical therapist. She is the sole owner of Rehab Specialists of South GA, Inc. She testified that she has worked in the healthcare field for 37 years. She has no immediate plans to retire as evidenced by her tongue-in-cheek testimony that she intends to work until three years after she's dead. Debtor's Statement of Financial Affairs indicates she earned $93,789 in 2011, $103,715 in 2012, and $92,000 in 2013 up to her petition date. According to Schedule I, her gross monthly salary is $7,150 and her net monthly take-home pay is $5,125.35.

Debtor opened her HSA in 2008 to help pay for medical expenses not covered by her health insurance. She funded the HSA with money from her personal checking account, and she paid all her out-of-pocket healthcare expenses from the account. With one exception, all

disbursements made from the account were used to pay medical expenses. The one exception occurred on September 19, 2011, when she withdrew $1,000, which represented the amount she erroneously deposited in excess of the annual contribution limit. Debtor testified that she never received any notices from the bank that any of her HSA disbursements were made for an improper purpose.

The Court held a hearing on the Trustee's objection to exemptions on November 12, 2013. Having considered the evidence presented during the hearing and the parties' legal arguments and briefs, the Court will sustain the objection.

## Conclusions of Law

At issue in this case is whether Debtor may exempt a health savings account from her bankruptcy estate. As the objecting party, the Trustee has the burden to prove by a preponderance of the evidence that Debtor is not entitled to the exemption. Fed. R. Bankr. P. 4003(c); Silliman v. Cassell, 738 S.E.2d 606, 612 (Ga. 2013).

As a general rule, when a debtor files a bankruptcy petition, her property becomes property of the bankruptcy estate. 11 U.S.C. § 541(a). Certain property may be exempted from the estate under applicable federal or state law. For debtors who reside in Georgia, the applicable exemptions are codified at O.C.G.A. § 44-13-100(a) (Supp. 2013).[1] Debtor seeks to exempt her HSA under § 44-13-100(a)(2)(C) and (E).

Health savings accounts are creatures of the Internal Revenue Code. Created as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173

---

[1] As authorized by Congress at 11 U.S.C. § 522(b)(2), Georgia has opted out of the federal bankruptcy exemptions.

3

§ 1201, 117 Stat. 2066 (Dec. 8, 2003), they provide a tax-advantaged vehicle for payment of medical expenses by individuals with high-deductible health insurance plans.[2] See IRS Publication 969 (Jan. 30, 2013). HSAs are set up as trust accounts. 26 U.S.C. § 223(d)(1). Non-employer contributions to a qualified HSA, within annual contribution limits, are tax deductible. Id. § 223(a), (b). Employer contributions are excluded from the employee's gross income. Id. § 106(a), (d). In addition, distributions from an HSA used to pay qualified medical expenses are excluded from gross income and, thus, are tax-free. Id. § 223(f)(1). With narrow exceptions, nonqualified distributions are treated as gross income subject to regular income taxation in addition to a 20 percent penalty. Id. § 223(f)(2), (4).

Debtor contends her HSA constitutes a right to receive an illness benefit or a payment on account of illness within the scope of O.C.G.A. § 44-13-100(a)(2)(C) and (E), which provides for an exemption of:

> (2) The debtor's right to receive:
> ...
> (C) A disability, illness, or unemployment benefit;
> ...
> (E) A payment under a pension, annuity, or similar plan or contract on account of illness ... to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]

Id.

Debtor argues Congress intended to create a health and illness benefit when it authorized HSAs and that the Georgia General Assembly has recognized HSAs as an illness benefit. Because the Georgia bankruptcy exemptions pre-existed the HSA legislation, the state legislature

---

[2] Georgia has enacted legislation to encourage the creation of HSAs that meet the IRS guidelines. O.C.G.A. § 33-51-2 (2013).

4

must have intended that HSAs would fall within scope of the exemption statute. Debtor also argues that an HSA falls within the ordinary definition of the term "illness benefit," and is thus exempt according the plain language of the exemption statute.

Despite Debtor's argument that HSAs are clearly exempt, nothing in O.C.G.A. § 44-13-100(a)(2) expressly exempts HSAs. The Georgia Assembly has amended the exemption statute three times since the development of HSAs;[3] none of the amendments included any direct or indirect references to HSAs. By contrast, at least six states–Florida, Mississippi, Oregon, Tennessee, Texas, and Virginia–expressly provide for the exemption of HSAs.[4] Absent such an unequivocal expression of legislative intent, the Court must consider whether HSAs fall within one of the more general categories of property exempted by state law.

Debtor contends HSAs are an illness benefit or a payment on account of illness. Webster's Dictionary defines "benefit" as "something that promotes well-being," "useful aid," "financial help in time of sickness, old age, or unemployment," or "payment or service provided for under an annuity, pension plan, or insurance policy." Merriam Webster's Collegiate Dictionary 106 (10th ed. 1994). Black's Dictionary defines a "benefit" as "advantage; privilege[.]" Black's Law Dictionary 178 (9th ed. 2009). Webster's defines "illness" as "an unhealthy condition of body or mind[.]" Webster's at 577. Black's does not define "illness."

---

[3] Ga. L. 2012, p.1030, Act 722, § 2, eff. May 2, 2012 (amendment to increase the amount of the homestead exemption); Ga. L. 2013, p.141, Act 33, § 44, eff. April 24, 2013 (technical amendment to revise punctuation); Ga. L. 2013, p.1045, Act 328, § 2, eff. July 1, 2013 (amendment to increase the amount of the vehicle exemption).

[4] Fla. Stat. Ann. § 222.22(2); Miss. Code Ann. § 85-3-1(g); Ore. Rev. Stat. § 18.345(1)(o); Tenn. Code Ann. § 26-2-105(b); Tex. Prop. Code § 42.0021(a); Va. Code. Ann. § 38.2-5604(B).

Based on the ordinary definitions of illness and benefit, an HSA can be described as a benefit in that it is a "useful aid" or "advantage" for saving for medical expenses. However, that benefit or right to payment is not limited to "unhealthy conditions." Qualified medical expenses include expenses "for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body." 26 U.S.C. §§ 213(d)(1)(A), 223(d)(2). Furthermore, the Georgia Supreme Court's decision in <u>Silliman v. Cassell</u>, 738 S.E.2d 606 (Ga. 2013), supplies the framework for a narrow definition of payments on account of illness and illness benefits. In <u>Cassell</u>, the court reasoned that the "common feature" of all the plans listed in O.C.G.A. § 44-13-100(a)(2)[5] "is that they provide income that substitutes for wages." <u>Id.</u> at 610.

In deciding <u>Cassell</u>, the Georgia Supreme Court relied on the United States Supreme

---

[5] O.C.G.A. § 44-13-100(a)(2) exempts from the bankruptcy estate the debtor's right to receive the following:
    (A) A social security benefit, unemployment compensation, or a local public assistance benefit;
    (B) A veteran's benefit;
    (C) A disability, illness, or unemployment benefit;
    (D) Alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;
    (E) A payment under a pension, annuity, or similar plan or contract due on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; and
    (F) A payment from an individual retirement account within the meaning of Title 26 U.S.C. Section 408 to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Court's interpretation of the nearly identical federal exemption statute, 11 U.S.C. § 522(d)(10),[6] in Rousey v. Jacoway, 544 U.S. 320, 125 S. Ct. 1561 (2005). In Rousey, the Supreme Court considered whether an individual retirement account ("IRA") was exempt under 11 U.S.C. § 522(d)(10)(E). Id. at 322, 125 S. Ct. at 1564. At issue was whether an IRA was a plan similar to those listed in the statute and whether it gave the debtors a right to receive payments "on account of age." Id. at 325, 125 S. Ct. at 1566. In a unanimous opinion, the Court allowed the exemption. Id. at 322, 125 S. Ct. at 1564.

The Court first considered whether the debtors' right to receive payments from the IRA was "on account of age." Id. at 326, 125 S. Ct. at 1566. The debtors could withdraw money from their accounts at any time and for any reason. However, withdrawals made before they reached the age of 59 ½ were subject to a 10 percent tax penalty. Id. at 327, 125 S. Ct. at 1566-67. The Court described the penalty as "substantial" and noted that "it prevents access to the 10 percent that the Rouseys would forfeit should they withdraw early, and thus it effectively prevents access to the entire balance in their IRAs." Id. at 327-28, 125 S. Ct. at 1567. Due to the penalties for

---

[6] The federal bankruptcy exemptions provide for the exemption of:
   (10) The debtor's right to receive–
      (A) a social security benefit, unemployment compensation, or a local public assistance benefit;
      (B) a veterans' benefit;
      (C) a disability, illness, or unemployment benefit;
      (D) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;
      (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]
11 U.S.C. § 522(d)(10).

early withdrawals, the Court concluded the debtors' IRAs "provide a right to payment on account of age." Id. at 329, 125 S. Ct. at 1568.

The Court next considered whether an IRA is similar to those plans and contracts expressly listed in § 522(d)(10)(E): stock bonus plans, pension plans, profitsharing plans, and annuity contracts. Id. The Court found that all the plans listed in the statute share a similar purpose in that they provide "a substitute for wages (by wages, for present purposes, we mean compensation earned as hourly or salary income) ...." Id. The Court further noted that the other types of assets exemptible under § 522(d)(10)–including illness benefits–also "concern income that substitutes for wages." Id. at 331, 125 S. Ct. at 1569.

In Cassell, the Georgia Supreme Court considered whether an annuity owned by the debtor was exempt under O.C.G.A. § 44-13-100(a)(2)(E). 738 S.E.2d at 609. The court recognized that the ordinary meaning of annuity–"an obligation to pay an amount at regular intervals for a certain or uncertain period of time"–applied to O.C.G.A. § 44-13-100(a)(2)(E). Id. at 610. However, this definition is limited by the language of the exemption statute. Id. at 610.

> If we were to apply only this definition of annuity for purposes of OCGA § 44-13-100(a)(2)(E), every annuity regardless of its origin or purpose would be exempt from a debtor's bankruptcy estate and protected from creditors. We do not believe this is the result intended by our legislature when it adopted OCGA § 44-13-100(a)(2)(E). OCGA § 44-13-100(a)(2)(E), like its federal counterpart, exempts from a debtor's bankruptcy estate only those payments due under a "pension, annuity, or similar plan or contract." Courts have limited the similar language in both the federal and state exemption schemes to mean that <u>a debtor's interest in an annuity, contract or similar plan may qualify for the exemption if it is intended to "provide income that substitutes for wages."</u>

Id. at 610 (quoting Rousey, 544 U.S. at 331, 125 S. Ct. at 1569) (emphasis added). Although the

court was specifically addressing O.C.G.A. § 44-13-100(a)(2)(E), it went on to state that all the property rights listed in O.C.G.A. § 44-13-100(a)(2) are in the nature of a substitute for wages. 738 S.E.2d at 610. The "wage replacement" interpretation is further supported by the legislative history to the federal exemption statute.

> Paragraph (10) [of 11 U.S.C. § 522(d)] exempts certain benefits that are akin to future earnings of the debtor. These include social security, unemployment compensation, or public assistance benefits, veteran's benefits, disability, illness, or unemployment benefits, alimony, support, or separate maintenance ..., and benefits under a certain stock bonus, pension, profitsharing, annuity or similar plan based on illness, disability, death, age or length of service.

H. Rept No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977), p 360-63 (emphasis added); 738 S.E.2d at 610.

To determine whether a plan serves as a substitute for wages, the court must consider all relevant factors, including: (1) the nature of the plan or contract; (2) the circumstances surrounding the purchase of the plan or contract; (3) whether contributions to the plan were made over time; (4) the extent of the debtor's control over the asset; and (5) whether the asset is part of a prebankruptcy planning scheme. 738 S.E.2d at 610-11. In addition, the source of the funding for the plan may be a nondeterminative factor. Id. at 611 n.4.

In Cassell, the debtor had inherited $220,000 and used the money to purchase a single-premium fixed annuity when she was 65 years old. Id. at 608. She purchased the annuity to replaced her income upon retirement. Id. at 611. The annuity guaranteed payments to the debtor until her death. Although she could assign the right to payment or change the beneficiary, she could not cancel the annuity, withdraw funds, or change the payment terms. Id. at 608. In these

9

circumstances, the court concluded the annuity served as a substitute for wages because "once the payments began and at the time of filing of her bankruptcy petition, Cassell was entitled only to the payments from the annuity and she had no authority over either the corpus or the amount or frequency of payments from the annuity." Id. at 611. The court further concluded that the debtor's right to receive payments under the annuity was on account of age because the annuity contract provided penalties for early withdrawal and because the amount of payments was based in part on the debtor's age. Id. at 612-13. Compare In re McFarland, 500 B.R. 279, 285-87 (Bankr. S.D. Ga. 2013) (annuity was not exempt under O.C.G.A. § 44-13-100(a)(2)(E) when the debtor purchased the annuity to benefit his wife upon his death and did not intend it as a wage substitute; the annuity was not necessary for the debtor's support; the annuity was structured more like an investment than a wage replacement; and the debtor retained significant control over the annuity and its corpus).

In this case, nothing about Debtor's HSA indicates it is intended as a substitute for wages. Congress established HSAs as a tax-favored means of saving for medical expenses in conjunction with a high-deductible health insurance policy. Debtor testified that she opened her HSA to pay for medical expenses and has used it exclusively for that purpose. Debtor opened the account five years prior to filing her bankruptcy petition, she has been employed for the life of her HSA, and she has funded the HSA from her personal checking account. Her ability to take distributions from the HSA is in no way connected to her employment status. In fact, if she were to suffer an unexpected interruption in income, the tax penalties for nonqualified distributions would limit her ability to use the HSA for her support. These factors demonstrate that Debtor's HSA provides her with a means to plan for and manage her medical expenses, but it does not act

as a replacement for her income.

Debtor has also argued that HSAs should be exempt based on their functional and structural similarities to IRAs. Both HSAs and IRAs are tax-favored savings accounts with penalties for nonqualified withdrawals. However HSAs differ from IRA in two significant ways: (1) as described in Rousey, IRAs function as a substitute for wages after an individual retires, 544 U.S. at 329-30, 125 S. Ct. at 1568; by contrast, HSAs function as a means to save for and to pay medical expenses without regard to the income needs of the account owner; and (2) payments from an IRA reasonably necessary for the debtor's support and the corpus of the IRA are expressly exempt under Georgia law, O.C.G.A. § 44-13-100(a)(2)(F), (a)(2.1)(D); HSAs are not.

Because the HSA is not a substitute for wages, it is not the type of illness benefit or right to receive payment on account of illness contemplated by O.C.G.A. § 44-13-100(a)(2)(C) and (E). Therefore, the Court will sustain the Trustee's objection to Debtor's exemption of her HSA.

An Order in accordance with this Opinion will be entered on this date.


END OF DOCUMENT