**SIGNED this 15 day of January, 2015.**



**James P. Smith**
**Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 7 |
| | : | |
| DENISE E. MOONEY, | : | |
|         Debtor | : | Case No. 13-10835-JPS |
| | : | |
| JOY R. WEBSTER, TRUSTEE, | : | |
|         Movant | : | |
| | : | |
| vs. | : | |
| | : | |
| DENISE E. MOONEY, | : | |
|         Respondent | : | |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

    For Movant:                             Robert M. Matson
                                               Akin, Webster & Matson, P.C.
                                               P. O. Box 1773
                                             Macon, GA 31202

    For Respondent:                    Ward Stone, Jr.
                                             Matthew S. Cathey
                                             Stone & Baxter, LLP
                                             577 Mulberry Street, Suite 800
                                             Macon, GA 31201

## MEMORANDUM OPINION

Before the Court are cross-motions for summary judgment on the trustee's motion to compel turnover of certain tax credits and refunds. The material facts are not in dispute. The Court, having considered the record and the applicable law, now publishes this memorandum opinion.

"A motion for summary judgment should be granted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c). . . *Celotex Corp. v. Catrett*, 477 U.S. 371, 322, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986); *see also Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996). On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *See Cast Steel*, 347 F.3d at 1301." *Midrash Sephardi, Inc., v. Town of Surfside*, 366 F.3d 1214, 1223 (11th Cir. 2004).

Although Rule 56 was completely rewritten in 2010, no change was made to the summary judgment standard itself or to the burdens imposed on movants and opponents. 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d*, Text of Rule 56, n.6 (Supp. 2014).

["The] filing of cross-motions [for summary judgment] does not establish that there is no material fact in issue and that a trial is therefore unnecessary. The Court must still make an independent evaluation as to the merits of each party's motion." *Donovan v. District Lodge No. 100, International Assoc. of Machinists and Aerospace Workers, AFL-*

*CIO,* 666 F.2d 883, 886 (5th Cir. Unit B, 1982).

"The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard. Both motions must be denied if the court finds that there is a genuine issue of material fact." 10A Wright, Miller, & Kane, *Federal Practice and Procedure: Civil 3d,* § 2720, pp 335-36 (1998).

## FACTS

Debtor is a physical therapist who owns a business known as Rehab Specialists of South Georgia, Inc. ("Rehab Specialists"). Debtor's tax returns show that she receives income from her salary, investments, rental real estate, and S corporations. As more fully described below, in 2013, Debtor had state and federal income tax withheld from her salary paychecks which she received every two weeks. In addition, she made estimated tax payments.

For 2012, Debtor was entitled to a federal tax refund of $63,009.[1] On June 18, 2013, she deposited this refund into her bank account. On June 24, 2013, she sent two checks for $3,300 each to the Georgia Department of Revenue for her first and second quarter 2013 state estimated tax payments. On June 25, 2013, Debtor sent two checks for $18,350 each to the United States Treasury for her first and second quarter 2013 federal

---

[1] On May 22, 2014, the trustee received a check for $17,466.16 from the Georgia Department of Revenue for Debtor's 2012 state tax refund. This refund is not in issue in this litigation.

estimated tax payments.[2] In her deposition, Debtor testified that she made the estimated tax payments after a discussion with her CPA and that her CPA "came up with the amounts for the estimated tax payments." Debtor also testified that she did not make the first quarter federal estimated tax payment on April 15, 2013, because she did not have the funds to do so at that time.

Debtor filed her Chapter 7 case on June 27, 2013. Debtor disclosed the estimated tax payments that she had made on June 24 and 25, 2013 on her Statement of Financial Affairs. Debtor did not list her 2012 state refund, her 2013 estimated tax credits or her 2013 potential federal and state refunds as assets on her Schedule B.[3]

On September 14, 2013, Debtor made a $4,000 payment on her 2013 federal estimated taxes. On April 15, 2014, Debtor filed her 2013 federal and state tax returns.[4] Debtor's federal return shows, in part, the following entries:

| | |
|---|---|
| Salary | $ 90,647 |
| Income from rental real estate and S corporations | $ 66,193 |
| Adjusted gross income | $147,653 |
| Tax owed | $ 25,438 |

---

[2] State and federal first quarter estimated tax installments are due on April 15 and second quarter installments are due on June 15. O.C.G.A. § 48-7-116(a); 26 U.S.C. § 6654(c).

[3] Debtor filed an amendment to Schedule B on December 4, 2014, disclosing the portion of the 2012 and 2013 tax refunds she contends the estate should receive.

[4] Debtor did not elect to terminate her 2013 tax year on the day before the bankruptcy petition date, 26 U.S.C. § 1398(d)(2), and chose instead to file a single tax return for the 2013 tax year.

>           Payments
>
>                   Withholding             $12,502
>                   Estimated Tax           $40,700[5]
>                                           $53,202
>
>   Refund                                  $ 27,764

Debtor's 2013 state return shows, in part, the following entries:

>   Tax owed                                $ 6,770
>
>   Payments
>
>                   Withholding             $ 5,040
>                   Estimated Tax           $ 8,600[6]
>                                           $13,640
>
>   Refund                                  $ 6,870

Debtor has received her 2013 federal and state tax refunds. The refunds are currently held in her attorney's trust account pending further order of the Court.

## DISCUSSION

In her amended motion for turnover, the trustee demands, pursuant to 11 U.S.C. § 542(a), that Debtor turn over the federal and state tax credits arising from the 2013 estimated tax payments that Debtor made before filing her Chapter 7 case. The federal prepetition tax credits totaled $36,700 and the state tax credits totaled $6,600. In her

---

[5] This amount includes the $36,700 that Debtor paid on June 25, 2013, and $4,000 that Debtor paid postpetition on September 14, 2013.

[6] This amount includes the $6,600 that Debtor paid on June 24, 2013, and $2,000 that Debtor paid on an undisclosed date that is not in dispute.

motion for summary judgment, the trustee alternatively asks for turnover of a portion of the 2013 tax refunds. Debtor is willing to pay over a portion of the 2013 refunds, but disagrees with the method of calculating the proper amount as proposed by the trustee.

   A.  Tax Credits.

The trustee contends that the tax credits are property of the estate, within the "control of the debtor" for purposes of 11 U.S.C. § 542(a), and are therefore subject to turnover. Debtor disputes that the tax credits are property of the estate. Alternatively, Debtor argues that the tax credits are not within her "control" because, pursuant to Rev. Rul. 54-149, 1954-1 CB 159-60,[7] once paid to the taxing authority, those payments can only be refunded after the payments are applied to taxes due for the year in which payments are made.

Neither the Eleventh Circuit Court of Appeals nor any district court or bankruptcy court within the Eleventh Circuit has published a decision on this issue. The Ninth Circuit and Tenth Circuit have each published decisions, but reached opposite conclusions.

The trustee relies on the Ninth Circuit case of Nichols v. Birdsell, 491 F.3d 987 (9th Cir. 2007). There, the debtors elected to have their 2001 tax refund applied to their 2002 tax liability. Sixteen days later, the debtors filed bankruptcy. The trustee sought

---

   [7] "Payments of estimated tax for a particular taxable year may not be refunded prior to the close of such taxable year, even though an amended declaration filed by the taxpayer after such payments were made may show an estimated tax liability of zero. Such payments may be refunded only after the close of the taxable year for which they are made, when the actual amount of taxes due and the amount of the overpayment may be correctly determined. See section 322(e) of the Internal Revenue Code." Georgia law is similar. See O.C.G.A. § 48-7-121(c).

turnover of the tax credits. The debtors argued that their election to apply the prior year's refund to the next year's tax liability was an irrevocable election under 26 U.S.C. § 6513(d). The Ninth Circuit held that 11 U.S.C. § 541(a) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." The court further noted that:

> section 541(c)(1) provides that a debtor's interests become property of the estate even in circumstances in which the interest cannot be liquidated and transferred by the debtor.

Id. at 990. Accordingly, the court held that the tax credits were property of the estate and ordered turnover.

In the case of Weinman v. Graves (In re Graves), 609 F.3d 1153 (10th Cir. 2010), the Tenth Circuit was faced with similar facts. Relying in part on Nichols, the court acknowledged that the tax credits were property of the estate. However, the court further held:

> One of the central precepts of bankruptcy law is that a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition. Filing a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest. Further, a trustee takes the property subject to the same restrictions that existed at the commencement of the case. To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate.
> In re Sanders, 969 F.2d 591, 593 (7th Cir. 1962) (citations and quotations omitted); see also Collier on Bankruptcy ¶ 541.01 at 541-8.3 (15th ed. rev. 2009) ("Subdivision (d) of [§ 541] makes clear that the estate can only succeed to the

> same property interest that the debtor possesses, and cannot achieve a greater interest.").
> Applying this principal, it is clear that the trustee's interest in the application of the tax refund must be limited to the same extent as the debtor's interest-here by the strictures of 26 U.S.C. § 6513(d), which makes debtors' refund-application election irrevocable. Debtors will have no right to any cash from the [prior year] refund applied as a prepayment of their [current] taxes until their [current] tax liability is determined, and then only if they are entitled to a further refund. The portion of that further refund attributable to the pre-petition earnings would become property of the estate. Thus, we hold that the estate's interest in the pre-payment is limited to debtors' contingent reversionary interest in the pre-payment attributable to pre-petition earnings.

Id. at 1156.

Having found that the estate's interest in the tax credits was so limited, the court then turned to whether turnover was appropriate. The court held:

> ...we first consider the statutory language which requires that the turnover target, here debtors, be "in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under [11 U.S.C. §]363." 11 U.S.C. § 542(a). We agree with the [lower court] that, after filing their chapter 7 petition and at least through the culmination of the turnover proceeding, debtors were never in "possession, custody, or control" of their contingent reversionary interest in the prepayment of their [current year] taxes.

Id. at 1157. However, the court noted that the circumstances may have changed due to the passage of time.

> Things may be different now, however, because it is likely that debtors' [current year] tax liability has been determined. If debtors were entitled to a refund after their [current year] tax liability was satisfied, the trustee is entitled to demand turnover of any amount of such refund

> attributable to prepetition earnings.

Id. at 1158.

With respect to the Nichols case, the court held:

> We are aware that, to a large extent, this holding conflicts with the Ninth Circuit's decision in Nichols, 491 F.3d 987. There, in a case factually indistinguishable from this one, the Ninth Circuit held that the entire refund amount was property of the estate and implicitly subject to turnover from the debtors. In doing so, however, the court focused entirely on whether the refund was property of the estate and neither discussed turnover nor analyzed the case in light of the language of § 542(a). It is therefore unclear how the Ninth Circuit would apply the statutory requirements for turnover, which clearly require possession during the case, to the present situation.
>
> We find some appeal in the reasoning of the Ninth Circuit that, by electing to have their [prior year] refund applied to [current year] taxes, the debtors in Nichols, like debtors here, received something of value, i.e., a dollar-for-dollar reduction on their [current year] taxes, money that could have been available to the bankruptcy estate had the election not been made. The fact that all or part of a tax prepayment can be estate property, however, does not determine the extent of the property interest in the hands of the trustee nor, as discussed above, does it determine whether that interest is subject to turnover.

Id. at 1158-59.

A similar result was reached in the case of Kuntz v. United States (In re Halle), 132 B.R. 186 (Bankr. D.Colo. 1991). In that case, six weeks before filing bankruptcy, the debtor made estimated tax payments to the IRS of $73,500 toward his 1987 tax liability. Subsequently, the IRS accessed debtor his 1987 tax liability, applied the prepetition estimated payments to the liability and refunded a small amount to the debtor. The

-10-

trustee filed suit against the IRS seeking, in part, turnover of the estimated payments.

The bankruptcy court noted the limited interest of the debtor in the estimated payments pursuant to Rev. Rul. 54-149, 1954-1 CB 159-60.  The court held:

> Moreover, this Court has found no provision in the Internal Revenue Code which requires, or even permits, the IRS to return estimated tax payments prior to the time the tax return is due.  Hence, the only interest which [the debtor] retained in the estimated taxes at the date of his petition is the right to a refund resulting from any overpayment of estimated taxes.

Id. at 189.  Accordingly, the court held that the trustee had no right to recover the estimated payments from the IRS.

The Eleventh Circuit has recognized that the trustee succeeds only to the title and rights in the property that the debtor possessed prepetition.  Raborn v. Menotte (In re Raborn), 470 F.3d 1319, 1323 (11th Cir. 2006).  The only interest which Debtor had in the prepetition estimated payments was the right to a refund after filing her tax return.  The trustee succeeds to no greater right.  Accordingly, this Court agrees with the reasoning of the Tenth Circuit in Graves and holds that the trustee is not entitled to turnover of the prepetition tax payments.

B.  Allocation Of Tax Refund.

The trustee contends, and Debtor concedes, that the prepetition portion of the tax refund which Debtor received after filing the petition is property of the estate.  Doan v. Hudgins (In re Doan), 672 F.2d 831, 833 (11th Cir. 1982).  However, the parties disagree as to how to calculate the portion of the refund attributable to the prepetition period.

The trustee argues:

> The Debtor filed her 2013 federal tax return on April 15, 2014, and received a refund of $27,764.00 based on total tax payments of $53,202.00. The Debtor's 2013 federal tax payments consisted of $40,700.00 of estimated tax payments and $12,502.00 of withholdings. The Debtor made two estimated tax payments totaling $36,700.00 two days before the petition date. The Debtor made one post-petition estimated tax payment of $4,000.00. The Debtor was paid twice a month, and her withholdings did not change in 2013. The Debtor paid $6,251.00 in prepetition withholdings. As such, the Debtor paid a total of $42,951.00 ($36,700.00 of estimated payments + $6,251.00 of withholdings) prepetition. The Debtor made eighty one percent (81%) of her tax payments pre-petition $42,951.00/$52,302.00 = .81 (81%). Adopting a proration based on pre-petition payments would result in a tax refund of $22,414.41 ($27,764.00 X .81 = $22,414.41) for the estate.

Trustee's Brief in Support of Motion for Summary Judgment, p. 8, (Docket No. 96). The trustee makes a similar argument with respect to the state refund.

Debtor on the other hand contends that the refunds should be prorated to the date of filing based on the number of calendar days before and after the petition date. Debtor filed her petition on June 27, 2013, the 177th day of the year. Therefore, Debtor argues that the trustee is only entitled to $13,463.64 of the federal tax return (177/365 X $27,764 = $13,463.64).[8] Similarly, she contends that the prepetition portion of the state tax refund prorated on the number of days yields an amount due to the trustee of $3,331.48.

Due to the timing and amounts of the prepetition estimated payments, there is some logic to the methodology proposed by the trustee. However, the difficulty this Court has with adopting that methodology is that it does not take into account other factors which determine the amount of a debtor's refund.

The amount of a tax refund is a function of a number of components, including

---

[8] Debtor's brief apparently contains a mathematical error in that she calculates the amount to be $13,364.64.

the amount of income, the amount of tax payments, and a taxpayer's deductions and credits. Each of these components may be earned or accrue at different times during a tax year. For instance, some deductions may accrue solely prepetition or solely postpetition. Others may accrue evenly throughout the tax year. Thus, whether a refund relates to prepetition or postpetition earnings will not only be based on the amount of each component, but on the timing over which each component is earned or accrued.

In this case, the evidence introduced by the trustee includes Debtor's 2013 state and federal tax returns. It is admitted her salary income accrued evenly throughout the year. However, although the tax returns show the amount of income from other sources (investments, rents, etc.), tax credits and deductions, the Court has no evidence as to the timing over which these amounts were earned or accrued. Accordingly, there is no way of determining whether the refunds truly relate to prepetition or postpetition earnings.

The court in the case of In re Trickett, 391 B.R. 657 (Bankr. D.Mass. 2008) recognized this problem in holding:

> The pro rata by days method is frequently used to allocate a tax refund between pre and post-petition periods. [citations omitted]. This method of calculating the portion of a refund attributable to the estate involve dividing a debtor's refund over a 365-day year and multiplying the resulting number by the number of days from the beginning of the year to the petition date. A tax year is exactly that, a tax year, therefore, in determining the amount of the refund that becomes property of the Debtor's estate, the Court will not dissect the Debtor's tax return to determine the portion of the Debtor's refund attributable to actual pre-petition withholdings or to particular deductions, credits, individual business income and losses or exemptions. The Court is mindful that a pro rata by days approach may not yield a perfect result in every situation, but it is better than any other available approach. It provides a bright-line test that effectuates Congress' intent as expressed in the language of a legislative history of section 541.

<u>Id.</u> at 661 (emphasis in the original) (footnotes and citations omitted).

The Court recognizes that there may be instances in which the pro rata by days method is not appropriate. For instance, if a debtor prepaid one hundred percent of her estimated tax liability on the first day of the tax year and immediately thereafter filed bankruptcy, before earning any income, the pro rata by days method would not be appropriate. There may be other exceptional cases requiring a different result. However, this is not such a case. Thus, except in such exceptional cases, the Court adopts the pro rata by days method of allocating the tax refund. Accordingly, the trustee is entitled to recover from Debtor $13,463.64 of the 2013 federal tax return and $3,331.48 of the 2013 Georgia tax return.[9]

## CONCLUSION

For the reasons stated herein, the trustee's motion for summary judgment with respect to the prepetition tax credits is denied. The trustee's motion for summary judgment with respect to the tax refunds is granted in part and denied in part. Finally, the Debtor's motion for summary judgment is granted. A separate order will be entered consistent with this memorandum opinion.

* END OF DOCUMENT *

---

[9] The trustee makes other arguments relating to Debtor's failure to disclose the refunds and tax credits, whether Debtor acted in good faith in making the tax payments in question, and Debtor's alleged "high living expenses". A failure to disclose assets may be a ground for denial of discharge under 11 U.S.C. § 727(a)(4). A debtor's lack of good faith and spending habits may be considered by the court in determining whether a case should be dismissed under 11 U.S.C. § 707(b)(3). However, the trustee has not sought relief under any of those Code provisions. Whether those allegations have merit are irrelevant to the issue of whether the tax refunds are property of Debtor or property of the estate.